UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARRIE SUZANNE WUERFEL and
JOHN ANDREW WUERFEL,

            Plaintiffs,

     v.

THE CITY OF SEATTLE, et al.,

            Defendants.

CASE NO. C03-3660JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment (Dkt. # 45) and on Plaintiffs' cross-motion for partial summary judgment on collateral estoppel grounds (Dkt. # 54).  Having reviewed the motions together with all documents filed in support and in opposition, the court GRANTS in part and DENIES in part Defendants' motion and GRANTS in part and DENIES in part Plaintiffs' motion.

## II.  BACKGROUND

Late on the evening of November 23, 2001, Defendants Penelope Fulmer and David Gavurnik,[1] officers with the Seattle Police Department, received a report of

---

[1] Plaintiffs have voluntarily dismissed Officer Gavurnik from this suit. (Dkt. # 41).

ORDER - 1

potential domestic violence. The report came from a neighbor, Bronwyn Wojcik, who called 911 when she heard a male and female fighting, loud crashing noises, and the male saying something to the effect of "I'm going to kill you." Ms. Wojcik described the female as having blonde hair. Officers Fulmer and Gavurnik arrived at the Wuerfel's home over an hour after receiving the call. Once there, Officer Fulmer knocked on the front door of the Wuerfel residence at least twice and announced her presence as a police officer. From behind the door, Officer Fulmer heard a male's voice say, "Hold on a minute." After a brief delay, a woman with red or reddish brown hair, later identified as Mrs. Wuerfel, peeked out from behind a partially open door. Officer Fulmer asked her if she was okay and Mrs. Wuerfel stated that she was fine.

Despite Mrs. Wuerfel's response that she was okay, Officer Fulmer entered the residence stating that she was there to respond to a call reporting possible domestic violence. The officers did not have a warrant. As the officers entered the residence, a man, later identified as Mr. Wuerfel, told them to leave. Mrs. Wuerfel echoed this request. When Officer Fulmer tried to frisk Mr. Wuerfel he told her that he was prone to anxiety attacks and suffered from a bipolar disorder. Mr. Wuerfel admits he was "freaking out" and did not understand what was happening. At some point thereafter, Mrs. Wuerfel put her arms around her husband in a defensive posture toward the officers. At least once during the interaction with the officers, Mrs. Wuerfel left the front area of the house and attempted to place a 911 phone call, purportedly to report the warrantless entry and rough treatment by Officer Fulmer. On one occasion, Officer Fulmer followed and instructed her to hang up the phone and cooperate with the investigation. While inside, the officers observed and took pictures of holes, approximately the size of a fist, in the walls and in a door. The officers also saw and took pictures of a broken full-length mirror.

ORDER - 2

1
2
3
4

The parties dispute other details surrounding the interaction.  Defendants claim that Mr. and Mrs. Wuerfel interfered with the officers' investigation and that they engaged in aggressive behavior, including pushing Officer Fulmer.  The Wuerfels strongly contest this version of events.

5
6
7
8
9
10
11
12

Officer Gavurnik called a supervisor, Sergeant Sara Springer, to the scene.  After speaking with Officer Fulmer, Sergeant Springer approved the arrest of Mr. Wuerfel for obstruction and domestic violence harassment, and of Mrs. Wuerfel for assault of a police officer and obstruction.  The officers handcuffed the Wuerfels and transported them to the North Precinct office.  En route, Mr. Wuerfel complained that his handcuffs were too tight and causing him pain; Officer Gavunik loosened them.  Mr. Wuerfel spent one night in jail and Mrs. Wuerfel was released later that evening.

13
14
15
16
17
18

Mr. and Mrs. Wuerfel filed this suit against Officer Fulmer and Sergeant Springer, asserting claims under the Fourth Amendment for unreasonable search and seizure and excessive force.  Plaintiffs also claim that the City of Seattle is liable because Officer Fulmer acted in accordance with a municipal policy.  Plaintiffs also allege violations of state law for assault and battery, and false arrest/false imprisonment.

19
20
21
22
23

Defendants now move for summary judgment on all claims.  Plaintiffs have filed a cross-motion seeking partial summary judgment on the grounds that a Seattle Municipal Court's suppression hearing ruling in their favor has preclusive effect over at least portions of the instant matter.

24

### III.   DISCUSSION

25

**A.    Legal Standard**

26
27
28

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The party moving for summary

ORDER - 3

judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial responsibility, the burden shifts to the non-moving party to establish that a genuine issue as to any material fact exists. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Evidence submitted by a party opposing summary judgment is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The non-moving party cannot simply rest on its allegation without any significant probative evidence tending to support the complaint. See U.A. Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23.

**B.   Collateral Estoppel**

In the prior criminal proceeding against the Wuerfels, Judge Paul Bailey in Seattle Municipal Court granted the Wuerfel's motion to suppress evidence obtained after the officers entered their home. Plaintiffs assert that the doctrine of collateral estoppel should apply to the instant proceeding to prevent the City of Seattle ("the City") and Officer Fulmer from relitigating the issue of whether the warrantless entry into the Wuerfel home was constitutional.

The doctrine of collateral estoppel, or issue preclusion, prevents relitigation of an issue after the party against whom the doctrine is applied has had a full and fair

ORDER - 4

opportunity to litigate his or her case.  Hanson v. City of Snohomish, 852 P.2d 295, 300

(Wash. 1993).[2]  Before a court may apply the doctrine of collateral estoppel, the moving

party must prove that: (1) the issue decided in the prior adjudication is identical to the one

presented in the second; (2) the prior adjudication ended in a final judgment on the

merits; (3) the party against whom the doctrine is asserted was a party or in privity with a

party to the prior adjudication; and (4) application of the doctrine will not work an

injustice.  Nielson v. Spanaway Gen. Medical Clinic, Inc., 956 P.2d 312, 316 (Wash.

1998).  All four elements must be met before the court may apply the doctrine.  George v.

Farmers Ins. Co. of Washington, 23 P.3d 552, 559 (Wash. Ct. App. 2001).

     At the threshold, Defendants contend that the court should strike the uncertified

court transcript of the Seattle Municipal Court suppression hearing submitted by Plaintiffs

on the grounds that it is not authenticated and contains hearsay.  Plaintiffs submit in their

reply[3] the declaration of Andi Anderson, assistant to Plaintiffs' counsel, who attests that

she transcribed the suppression hearing from an audio tape of the proceedings.

Defendants are correct that an admissible trial transcript is typically one that is certified.

Orr v. Bank of America, NT & SA, 285 F.3d 764, 774-777 (9th Cir 2002).  The court

notes, however, that there are exceptions to this rule.  See, e.g., Batye v State, 599 S.W.2d

---

[2] Federal courts apply state law in determining the preclusive effect of a state judgment. Fernhoff v. Taho Regional Planning Agency, 803 F.2d 979, 986 (9th Cir. 1986).

[3] The court is discouraged that even after receiving an extension to file a cross-motion for partial summary judgment, Plaintiffs' counsel still failed to submit properly authenticated evidence in support of his opening brief.  Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 (9th Cir. 1989) (facts relied upon in a motion for summary judgment must be admissible); see also Fed. R. Civ. P 6(d) (affidavit in support of a motion should be served concurrently).  Still, the court has discretion to consider Ms. Anderson's declaration even though it is filed for the first time in support of Plaintiffs' reply brief.  Glenn K. Jackson v. Roe, 273 F.3d 1192, 1201 (9th Cir. 2001).

ORDER - 5

231 (Mo. Ct. App. 1980) (transcript of hearing admitted where the court taped the hearing, secretary of prosecuting attorney took stenographic notes and then transcribed the hearing from the tape recording and her notes).  In any case, Defendants do not appear to contest the genuineness of the submission and readily acknowledge that a prior suppression hearing resulted in a final judgment in favor of the Wuerfels.  Defs.' Resp. at 8.  It appears that Defendants object to the transcript's inclusion solely on technical grounds out of concern that the content will unduly influence the court and detract from evidence offered in the current proceeding.  Where there is no suggestion that the document is otherwise unreliable, the court declines Defendants' request to strike the transcript on the basis of authenticity.

The court also denies Defendants' request to strike the suppression hearing transcript on hearsay grounds.  The court relies on the transcript solely to determine whether the Municipal Court hearing has preclusive effect, not whether particular statements tend to prove the truth of the matter asserted.  Fed. R. Evid. 801(c); see also U.S. v. Boulware, 384 F.3d 794, 806-07 (9th Cir. 2004) (state court judgment was not hearsay where offered to establish judgment's legal effect and not for the truth of the matter asserted).

### 1.    Collateral Estoppel as Applied to the City

Defendants contest application of collateral estoppel on two grounds.[4]  First, Defendants argue that the issues raised in the suppression hearing are not identical to those raised in the instant action because no alleged City policy was at issue in the

---

[4] Defendants do not dispute that Plaintiffs have satisfied the second and third elements of the doctrine – i.e. that there was a final judgment on the merits and that the City was a party in the prior proceeding.

ORDER - 6

criminal proceeding.  Second, Defendants contend that application of the doctrine would serve an injustice.

Assuming the other collateral estoppel elements are met, a suppression hearing in a criminal matter has collateral estoppel effect over subsequent civil litigation involving the constitutionality of a search.  See Barlindal v. City of Bonney Lake, 925 P.2d 1289, 1293 (Wash. Ct. App. 1996) (suppression hearing on whether search warrant was valid had preclusive effect over City's re-litigation of validity of search); see also Hanson, 852 P.2d at 301 (suppression hearing on whether police manipulated identification evidence had preclusive effect over malicious prosecution action); accord Haupt v. Dillard, 17 F.3d 285, 289 (9th Cir. 1994) (criminal hearing on whether probable cause supported arrest warrant had preclusive effect over subsequent civil rights action in which plaintiff claimed that the warrant was invalid).  That is, a determination at a suppression hearing necessarily involves the question of whether a search is constitutional and thus, arguing the validity of that search in a subsequent civil proceeding represents an identical issue to the prior proceeding.  Barlindal, 925 P.2d at 1293.

Here, the court is satisfied that Plaintiffs have established an identity of issues between the suppression hearing and the instant matter.  Tellingly, Defendants do not dispute that the suppression hearing concerned the issue of whether evidence obtained by the officers should be excluded as fruit of an illegal search of the Wuerfel home.  Defs.' Resp. at 19.  Defendants argue, rather, that they should not be estopped from litigating the constitutionality of the search because the suppression hearing did not involve the issue of whether the City has a policy (one element of a claim against a municipality under 42 U.S.C. §1983, discussed infra).  That the suppression hearing did not *also* involve a determination as to the existence of a City policy is immaterial.  Rather, the preclusive

ORDER - 7

effect of the suppression hearing is confined to the precise issue[5] of the constitutionality

of the search.  See, e.g., Seattle-First Nat'l Bank v. Cannon, 615 P.2d 1316, 1321 (Wash.

Ct. App. 1980) (applying preclusive effect only to those factual issues determined in prior

proceeding); accord Ayers v. City of Richmond, 895 F.2d 1267, 1272 (9th Cir. 1990)

(remanding case for trial on those issues not litigated in prior proceeding).  Thus,

although the state adjudication regarding the constitutionality of the search is entitled to

preclusive effect, the issue regarding the existence of an alleged City policy remains open

for this court's determination.

As to whether application of the doctrine works an injustice, the court concludes

that the City has had a full and fair opportunity at the suppression hearing to present

evidence regarding the validity of the search.  Hanson, 852 P.2d at 301 (reasoning that

plaintiff who had an opportunity to present his evidence to the trial court would not suffer

an injustice).  Accordingly, because Plaintiffs have satisfied the elements of the doctrine,

the court GRANTS Plaintiffs' cross-motion to apply collateral estoppel against the City

on the issue of the constitutionality of the search.

**2.      Collateral Estoppel as Applied to Officer Fulmer**

Plaintiffs argue that Officer Fulmer was in privity with the City in the criminal

proceeding because she had an interest in the outcome.  Washington courts have held that

serving as a witness does not render a government official in privity with her employer

and thus, the official cannot be estopped from relitigating an issue in a subsequent

proceeding.  Ward v. Torjussen, 758 P.2d 1012, 1014-15 (Wash. Ct. App. 1988); see also

---

[5] Collateral estoppel applies only to a particular *issue* and does not foreclose litigation involving a separate cause of action.  See Trautman, Philip A., CLAIM AND ISSUE PRECLUSION IN CIVIL LITIGATION IN WASHINGTON, 60 Wash. L. Rev. 805, 829 (1985).

Everett v. Abbey, 31 P.3d 721, 727 (Wash. Ct. App. 2001).[6]  For example, in Ward v. Torjussen, the Washington Court of Appeals held that a Bellevue police officer was not collaterally estopped from bringing suit for personal injuries against a driver where the City had previously and unsuccessfully prosecuted the driver for failure to yield the right-of-way to the officer's emergency vehicle.  Ward, 758 P.2d at 1014-15.  The court reasoned that despite being a witness in the prior proceeding, the officer had not had a full opportunity to litigate the issue given that an officer generally does "not have the right to conduct her own examination of witnesses, choose her own theory of the case, or be represented by counsel."  Id.; see also Everett, 31 P.3d at 727.  The only authority that Plaintiffs cite for the proposition that Officer Fulmer was in privity with the City in the prior proceeding is Barlindal, which is distinguishable as to this particular issue as it does not involve an individual government employee who served as a witness and later became a party in a civil suit.[7]

---

[6] Federal caselaw also supports this conclusion.  See Kinslow v. Ratzlaff, 158 F.3d 1104, 1106 (10th Cir. 1998); Tierney v. Davidson, 133 F.3d 189, 195 (2nd Cir. 1988); Davis v. Eide, 439 F.2d 1077, 1078 (9th Cir. 1971).

[7] In Barlindal, the City of Bonney Lake had worked closely with the prosecution team at Pierce County to obtain a criminal conviction following a drug bust and seizure of firearms.  In the criminal proceeding, defendant George Barlindal successfully argued that the search warrant was invalid.  In a subsequent action wherein Mr. Barlindal sued the City of Bonney Lake for damage to the firearms, the court held that the City was collaterally estopped from relitigating the issue of probable cause to search Mr. Barlindal's home.  The court reasoned that the City was in privity with Pierce County as the two operated with a joint law enforcement purpose in the initial proceeding.

ORDER - 9

Here, collateral estoppel does not apply to preclude Officer Fulmer[8] from litigating the constitutionality of her conduct because she was not in privity with the City in the prior proceeding.  Like the officer in <u>Ward</u>, Officer Fulmer cannot be said to have had control over the criminal proceedings brought by the City, even though she served as a key witness for the prosecution.  <u>Ward</u>, 758 P.2d at 1015.  Because failure to establish any one element of the doctrine is fatal, <u>George</u>, 23 P.3d at 559, the court DENIES Plaintiff's cross-motion to apply collateral estoppel against Officer Fulmer.

**C.    Qualified Immunity**

Plaintiffs assert claims under 42 U.S.C. § 1983[9] ("section 1983") for violations of the Fourth Amendment on three grounds: (1) Officer Fulmer's warrantless entry into the home, (2) the decision by Officer Fulmer and Sergeant Springer to arrest, which Plaintiffs claim lacked probable cause, and (3) Officer Fulmer's use of excessive force against Mr. Wuerfel.  Defendants assert that Officer Fulmer and Sergeant Springer did not violate the Wuerfel's constitutional rights or in the alternative, that qualified immunity applies.[10]

Qualified immunity provides a defense to a section 1983 claim where a reasonable person in the defendant's shoes could have mistakenly believed that the law did not prohibit his conduct.  <u>Saucier v. Katz</u>, 533 U.S. 194, 205 (2001).  The qualified immunity

---

[8] Plaintiffs do not appear to assert collateral estoppel against Sergeant Springer.  In any case, collateral estoppel would not apply to Sergeant Springer under the same principles as applied to Officer Fulmer.

[9] Section 1983 provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.

[10] As noted previously, the doctrine of collateral estoppel does not apply to Officer Fulmer and thus, the court considers the constitutionality of the search anew.

ORDER - 10

doctrine focuses on reasonable legal mistakes, not factual mistakes.  Id.  In some contexts, a reasonable mistake as to underlying facts will insulate a defendant from liability, but this is a separate inquiry from qualified immunity.  Id. (noting that reasonable, but mistaken, factual judgments can justify the use of force under the Fourth Amendment).

Since the Supreme Court decided Saucier, the Ninth Circuit has refined its two-step inquiry for addressing qualified immunity.  A court must first determine if the evidence taken in the light most favorable to the plaintiff shows that a constitutional violation occurred.  Kennedy v. City of Ridgefield, 411 F.3d 1134, 1141 (9th Cir. 2005). If a violation occurred, then the court must turn to the second step, which focuses on whether the law underlying the constitutional violation was "clearly established."  Id.  In this step, the court decides if the officer made a reasonable mistake about what the law requires.  Id. at 1142; see also, Doe v. Petaluma City Sch. Dist., 54 F.3d 1447, 1450 (9th Cir. 1995) (where the law is clearly established, the burden is on the defendant to prove that his or her actions were nonetheless reasonable).  Even where material facts are in dispute as to the official's conduct, a determination of whether the officer had an objective belief that his or her conduct was lawful is a question ordinarily for the court. Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993).  The court now applies the two-step analysis of qualified immunity to each alleged constitutional violation.

**1.  Officer Fulmer's Warrantless Entry into Plaintiffs' Home**

The parties do not dispute that Officer Fulmer entered the home without a warrant and without consent.  Plaintiffs contend that such entry was a violation of their Fourth Amendment rights, while Defendants contend that Officer Fulmer acted in response to exigent circumstances.

ORDER - 11

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 590 (1980).  The presence of exigent circumstances, however, provides a narrow exception to the warrant requirement.  United States v. McConney, 728 F.2d 1195, 1199 (9th Cir. 1984), abrogated on other grounds by Estate of Merchant v. C.I.R., 947 F.2d 1390, 1392 (9th Cir. 1991).  Exigent circumstances include situations that would cause a reasonable officer to believe that entry into the home was necessary "to prevent physical harm to the officers or other persons." Id.  Courts evaluate the reasonableness of a warrantless search in view of the "totality of the circumstances" as viewed from the perspective of the police officers at the time of entry.  United States v. Lindsey, 877 F.2d 777, 781 (9th Cir. 1989).  In claiming an exigency exception, police bear the "heavy burden" to demonstrate an urgent need to justify warrantless searches based on specific and articulable facts.  LaLonde v. County of Riverside, 204 F,3d 947, 957 (9th Cir. 2000) (citing Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984)).

The court is persuaded that, on Plaintiffs' facts, a reasonable juror could conclude that Officer Fulmer did not face exigent circumstances in responding to the possible domestic violence dispute.  The court is particularly sensitive to the fact that domestic violence situations can be volatile.  U.S. v. Martinez, 406 F.3d 1160, 1164 (9th Cir. 2005).  The court must, however, evaluate the particular circumstances at issue, such as whether the victim was in the view of the officers or whether the officers corroborated the exigency of the situation by interviewing witnesses.  Compare Martinez, 406 F.3d at 1164 (exigent circumstances not present where officer saw victim outside the home and did not believe that evidence of a crime would be found inside the home) with United States v. Brooks, 367 F.3d 1128, 1135 (9th Cir. 2004) (exigent exception applied where hotel

ORDER - 12

guests heard loud fighting, the police officers interviewed the 911 caller prior to entry, the room was in disarray upon opening the door, and the victim was out of sight).

Here, Defendants claim that the following circumstances justified Officer Fulmer's entry: the fact that a witness heard a death threat in the context of an argument between a male and a female; the sound of people shuffling around inside the Wuerfel home upon the officers' arrival; a male voice saying, "Hold on a minute"; a delay in responding to the officers' knocking; and a female answering the door and stating that everything was fine.[11]

In opposition, Plaintiffs provide evidence that the "delay" in answering the door was not more than fifteen seconds. Muenster Aff., Exh. B at 12 (Dep. of Officer Gavurnik). Plaintiffs also indicate that the officers arrived at the scene well over an hour after the 911 phone call and that the supposed victim, Mrs. Wuerfel, did not match the description given by the caller. Plaintiffs also argue, and Defendants do not dispute, that the officers did not hear any yelling or fighting prior to entering the home. Based on Plaintiffs' facts, the court concludes that a reasonable juror could find that Officer Fulmer's entry into the home without a warrant was unreasonable and lacked any "urgent need." Welsh, 466 U.S. at 749. Because Plaintiffs have produced sufficient evidence of a constitutional violation based on Officer Fulmer's warrantless entry, the court turns to the second step of the qualified immunity analysis to determine whether Officer Fulmer nevertheless made a reasonable mistake about what the law requires.

---

[11] Defendants also point to other circumstances that they contend corroborate Officer Fulmer's decision to enter, but such alleged facts are immaterial given that the court must evaluate whether exigent circumstances existed *at the time of entry*. Lindsey, 877 F.2d at 781.

ORDER - 13

The court concludes that Officer Fulmer is entitled to qualified immunity in light of clearly established law and in light of the information she possessed. Saucier, 533 U.S. at 205-06. In order to be clearly established, the right at issue must be sufficiently defined in relation to the particular facts. Anderson v. Creighton, 483 U.S. 637, 641-42 (1987) (the general principle that a person has a right to be free from warrantless home searches absent probable cause and exigent circumstances is not sufficient). Although Ninth Circuit decisions such as LaLonde, Martinez, and Brooks explore exigent circumstances and probable cause surrounding domestic disputes,[12] the decisions are not sufficiently clear to put a reasonable officer on notice that the conduct in question would be an apparent constitutional violation. Saucier, 533 U.S. at 205-06. Objective reasonableness is met if officers of reasonable competence could disagree on the legality of the action. Malley v. Briggs, 475 U.S. 335, 341 (1986).

The court concludes that officers of reasonable competence could disagree on whether the exigency exception to the warrant requirement applied in this situation. Malley, 475 U.S. at 341. The officers came to the Wuerfel home in response to a 911 call in which the Wuerfel's neighbor reported hearing a death threat. The parties do not dispute that Mrs. Wuerfel answered the door with only part of her body visible to the officers. The parties do not dispute that Mr. Wuerfel was present in the home, but out of

---

[12] In LaLonde, the court held that exigency did not justify a warrantless entry in a domestic disturbance situation despite a neighbor's phone call to police which reported that plaintiff John LaLonde owned a gun. 204 F.3d at 956. The Martinez court held that exigency did not justify a warrantless entry in response to a domestic violence dispute where an officer saw the victim outside the home and did not believe that evidence of a crime would be found inside the home. 406 F.3d at 1164. By contrast, the Ninth Circuit in Brooks held that the exigent exception applied where hotel guests heard loud fighting, the police officers interviewed the 911 caller prior to entry, the room was in disarray upon opening the door, and the victim was out of sight. 367 F.3d at 1135.

ORDER - 14

sight from the officers.  The parties also agree that Officer Fulmer immediately attempted

to pat down Mr. Wuerfel upon entry.  Defendants have provided sufficient evidence that

supports a reasonable belief by Officer Fulmer that entry into the home was required to

protect Mrs. Wuerfel from imminent harm.  <u>Saucier</u> provides that the qualified immunity

doctrine shields officers from reasonable legal mistakes.  533 U.S. at 205.  Accordingly,

the court GRANTS Defendants' motion for summary judgment on the grounds that

Officer Fulmer is entitled to qualified immunity for the warrantless entry into the Wuerfel

home.

> **2.     Probable Cause to Arrest**

Defendants contend that probable cause supported the arrest of Mr. Wuerfel for

obstruction based on his aggressive behavior and failure to cooperate, and for domestic

violence harassment based on the property damage observed.  As to Mrs. Wuerfel,

Defendants contend that probable cause supported her arrest because Mrs. Wuerfel

shoved Officer Fulmer, threatened to hit her with a phone, and interfered with the

investigation.  Plaintiffs strongly dispute this version of events.  Plaintiffs contend that

Officer Fulmer pushed her way into the home saying "DV,[13] I can do whatever I want,"

and that she was the one to instigate physical contact with Mr. Wuerfel.  Plaintiffs deny

that they assaulted or otherwise obstructed the officers in their investigation – they claim

only that they lawfully withheld their consent to the search.

The court is not persuaded that Plaintiffs have produced sufficient evidence of a

constitutional violation.  Probable cause exists when the facts and circumstances within

the officer's knowledge are sufficient to cause a reasonably prudent person to believe that

---

[13] "DV" stands for domestic violence.

ORDER - 15

a crime has been committed.  <u>Ybarra v. Illinois</u>, 444 U.S. 85, 91 (1979).  It is undisputed that the officers observed property damage, including fist-shaped dents in a door and a wall.  The damage was consistent with the 911 caller's report of loud crashes in connection with a domestic dispute.  Together with reports of a death threat, the undisputed facts are sufficient to establish probable cause, irregardless of the Wuerfels' alleged statements to the officers that nothing physical had occurred.  <u>See</u> <u>McBride v. Walla Walla County</u>, 975 P.2d 1029, 1032-33 (Wash. Ct. App. 1999) (under Washington's domestic violence laws, police officer had probable cause to arrest a father upon observing the son's injured jaw, notwithstanding parents' undisputed claims that father acted in self defense).  It is also undisputed that Mrs. Wuerfel shouted "hearsay" in response to the officers' questions, placed herself between her husband and Officer Fulmer, and left the front area of the house without permission of the officers to make phone calls.  It is also undisputed that Mr. Wuerfel was "freaking out" while Officer Fulmer attempted to frisk him.  Although the Wuerfels could lawfully withhold consent to the search, their subsequent interference with the investigation is sufficient to establish probable cause to arrest for obstruction.  <u>See</u> <u>State v. Contreras</u>, 966 P.2d 915, 919-20 (Wash. Ct. App. 1998) (a warrantless arrest of detainee for obstructing law enforcement officer was valid even though detainee correctly claimed that his refusal to speak to police could not form basis of obstruction claim; detainee also disobeyed order to keep hands up and exit vehicle, and gave false name).  Although the interaction between the officers and the Wuerfels also involve factual disputes, the undisputed facts are sufficient to cause a reasonably prudent person to believe that a crime had been committed.  <u>Ybarra</u>, 444 U.S. at 91.  Accordingly, the court GRANTS Defendants' motion for summary judgment on Plaintiffs' claim against Officer Fulmer and Sergeant Springer for unlawful arrest.

ORDER - 16

### 3.     Excessive Force

The Fourth Amendment's "objective reasonableness" standard governs section 1983 claims for excessive force.  Graham v. Conner, 490 U.S. 386, 388 (1989); Smith v. City of Hemet, 394 F.3d 689, 700 (9th Cir. 2005).  Determining whether force is reasonable under the Fourth Amendment requires a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests."  Graham, 490 U.S. at 396 (internal quotations omitted).  The court must gauge the reasonableness of the force from the perspective of the officer on the scene rather than with 20/20 hindsight.  Id.  The relevant factors used in determining the reasonableness of force include the nature of the crime involved, the threat the suspect posed, and whether the suspect was resisting arrest.  Id.  Because balancing the intrusion on an individual's Fourth Amendment interests against the government's interest "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," summary judgment in excessive force cases should be "granted sparingly."  Smith, 394 F.3d at 701 (quoting Santos v. Gates, 287 F.3d 846, 852 (9th Cir. 2002); accord Liston v. County of Riverside, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (noting that the reasonableness of force is "ordinarily a question of fact for the jury").  If the evidence, viewed in the light most favorable to Plaintiffs could support a finding of excessive force, granting summary judgment is not appropriate.  Smith, 394 F.3d at 700.

Taking the evidence in the light most favorable to Plaintiffs, the court must conclude that a reasonable jury could find that Officer Fulmer's application of force in handcuffing Mr. Wuerfel was excessive.  See LaLonde, 204 F.3d at 960 (issue of tight handcuffing is fact-specific and is likely to turn on the credibility of the witnesses).  Mr.

ORDER - 17

1   Wuerfel alleges that Officer Fulmer "twisted the handcuffs up as hard as she could." As a

2   result, Mr. Wuerfel contends that he suffered short-term numbness in his arms and long-

3   term pain in his wrists that lasted for over a month. Muenster Decl., Exh. E at 5, 6.

4

5       Defendants counter that Officer Gavurnik loosened the handcuffs when Mr.

6   Wuerfel complained. Defendants also contend that Mr. Wuerfel should not be able to

7   assert an excessive force claim because he cannot corroborate his alleged injury with

8   testimony by a physician. Although this is persuasive evidence as to the question of

9   damages, Defendants' argument misses the point for purposes of this summary judgment

10  motion. First, the fact that Officer Gavurnik loosened the handcuffs does not resolve the

11  issue of whether Office Fulmer applied excessive force in the first place. Second,

12  excessive force need not result in significant physical injury. Robinson v. Solano County,

13  278 F.3d 1007, 1014-15 (9th Cir. 2002) (pointing gun at suspect's head was excessive

14  force). On a summary judgment motion, the court must determine whether factual

15  disputes on the merits of the claim remain for the jury, even if the damages would likely

16  be nominal. Because the evidence could support a finding of excessive force by Officer

17  Fulmer, summary judgment is not appropriate. Thus, the court turns to the second

18  element of the qualified immunity analysis.

19

20      Assuming that Mr. Wuerfel's allegations regarding Officer Fulmer's use of force

21  are true, the court finds that no reasonable officer would have believed that the conduct

22  was lawful. The law is clearly established that the abusive application of handcuffs, by

23  fastening them so tightly as to cause pain and injury, violates the Fourth Amendment.

24  Palmer v. Sanderson, 9 F.3d 1433 (9th Cir. 1993). Accordingly, the court DENIES

25  Defendants' motion for summary judgment on the grounds that Officer Fulmer is entitled

26  to qualified immunity as to Plaintiffs' excessive force claim.

27

28

ORDER - 18

**D.     Municipal Liability Under Section 1983**

Under section 1983, a plaintiff may demonstrate municipal liability by proving that a city employee committed the alleged constitutional violations pursuant to an official policy or custom.  Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978).  Alternatively, a plaintiff may show that the conduct was the result of a "deliberate choice made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject matter in question."  Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986).  Finally, a plaintiff may show that an official policymaker either delegated policymaking authority to a subordinate or ratified a subordinate's decision, approving the "decision and the basis for it."  Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 126-27 (1988)).  Because the court has determined that the City is estopped from litigating the constitutionality of the search, the court now turns to the issue of whether there is a genuine issue of material fact regarding the existence of an official City policy or ratification by a final policymaker.

As to Plaintiffs' first theory of municipal liability, Plaintiffs have failed to show a genuine issue of fact for trial as to the existence of an official City policy.  An official policy is generally defined as a municipality's intent to "establish fixed plans of action to be followed under similar circumstances consistently and over time."  Pembaur, 475 U.S. at 483.  Plaintiffs do not provide to the court any particular ordinance, regulation, training manual, or any other manifestation that could constitute a City directive; rather, Plaintiffs rest solely on the testimony of Police Department employees who make general reference to "City policy."  Even if the court were to assume that such evidence supports an inference that an official policy *exists*, the policies referred to in testimony do not begin to

ORDER - 19

constitute "fixed plans of action" as contemplated by <u>Monell</u> and its progeny.  Instead, the testimony uniformly indicates that the City policy on responding to domestic violence calls is *not* preordained by the City or any final policymaker.  Rather, the policy referred to in testimony gives broad discretion to individual officers, based on their experience and the unique circumstances they face.[14]  A grant of discretion to an individual police officer, without more, cannot give rise to municipal liability.  <u>Pembaur</u>, 475 U.S. at 483.

In the alternative, Plaintiffs argue that municipal liability is proper because the "chain-of-command" ratified the warrantless entry by Officer Fulmer.  Based solely on the testimony of Sergeant Springer, Plaintiffs contend that the chain-of-command – up to, but not including the Police Chief – approved Officer Fulmer's conduct.  Muenster Aff., Exh. F. at 63-65.   Ratification, as alleged here, must be made by an official with final policymaking authority.  <u>Gillette</u>, 979 F.2d at 1346-47; <u>see also</u>, <u>Collins v. City of San Diego</u>, 841 F.2d 337, 341-42 (9th Cir. 1988) (actions of police sergeant could not trigger municipal liability because sergeant was not responsible for making final policy decisions for the city).  Plaintiffs do not so much as name any particular official that would represent a final policymaker for the Seattle Police Department, nor do they allege that the City (or even the Chief of Police) delegated any particular authority in the first place.  Plaintiffs' failure to bring forth any evidence in support of an essential element of their

---

[14] Captain Mark Evenson, a Training Commander for the Seattle Police Department, testified that there is no "cookie-cutter" response to whether particular circumstances require entry into the home.  Tran Decl. in Reply, Exh. C at 18.  Likewise, Sergeant Springer testified that she believed that "under those circumstances," Officer Fulmer's conduct was consistent with City policy.  Muenster Aff., Exh. F at 50 - 51.

ORDER - 20

case renders other facts "immaterial" for purposes of a summary judgment motion.[15]

Celotex, 477 U.S. at 322-23.  Accordingly, the court GRANTS Defendants' motion for summary judgment on Plaintiffs' section 1983 claim against the City.

**E.      Statutory Immunity as to State Law Claims**

Defendants assert that Officer Fulmer and Sergeant Springer are entitled to statutory immunity for Plaintiffs' false arrest/false imprisonment claim based on Washington's Domestic Violence Prevention Act ("DVPA").  RCW § 10.99.070.[16] Likewise, Defendants contend that Washington's use-of-force statute, RCW § 9A.16.120, provides immunity to Officer Springer as part of her duty to maintain the peace, which in turn, includes enforcement of the DVPA.  Plaintiffs base their assault and battery on the same operative facts as the excessive force claim.  Pfs.' Resp. at 23.  Likewise, the false arrest/false imprisonment claim turns on the facts surrounding the arrest, discussed previously. Id.

The question of statutory immunity under the DVPA is the same as the qualified immunity inquiry under federal law.  See Estate of Elwood Rayvon Lee, v. City of Spokane, 2 P.3d 979, 991-92 (Wash. Ct. App. 2000) (holding that there was no difference "between the question of good faith [in the DVPA] and the question of federal immunity") (citing Anderson, 483 U.S. at 641).  Because the court has previously

---

[15] Although the question of whether an official is a final policymaker involves a question of state law, the court notes that such a determination must also turn on particular facts, such as whether the municipality delegated its authority on a particular matter in the first instance.  See, Bouman v. Block, 940 F.2d 1211, 1231 (9th Cir. 1991).

[16] The DVPA provides that "A peace officer shall not be held liable in any civil action for an arrest based on probable cause, enforcement in good faith of a court or der, or any other action or omission in good faith under this chapter arising from an alleged incident of domestic violence brought by any party to the incident." RCW § 10.99.070.

ORDER - 21

1  determined that Officer Fulmer and Sergeant Springer are entitled to federal qualified

2  immunity, the court GRANTS Defendants' motion for summary judgment on the state

3  law claims of assault and battery, and false arrest/false imprisonment on the basis of

4  statutory immunity.

5

6                          **IV.  CONCLUSION**

7         For the reasons stated above, the court GRANTS in part and DENIES in part

8  Defendants' summary judgment motion (Dkt. # 45) and GRANTS in part and DENIES in

9  part Plaintiffs' cross-motion on collateral estoppel grounds (Dkt. # 54).  The only

10 remaining claim in this action is Mr. Wuerfel's claim of excessive force against Officer

11 Fulmer.

12

13        Dated this 5th day of January, 2006.

14                                          s/James L. Robart

15                                          _____

16                                          JAMES L. ROBART
                                            United States District Judge
17

18

19

20

21

22

23

24

25

26

27

28

ORDER - 22